**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE | : | CHAPTER 13 |
|     THOMAS SKINNER, | : | |
|         DEBTOR. | : | BANKRUPTCY NO. 13-13318-MDC |
| | : | |
| WILLIAM SKINNER, | : | |
|     PLAINTIFF, | : | ADVERSARY NO. 13-00405-MDC |
| v. | : | |
| THOMAS SKINNER AND ANNA SKINNER, | : | |
|     DEFENDANTS. | : | |

# **MEMORANDUM**

BY: MAGDELINE D. COLEMAN, UNITED STATES BANKRUPTCY JUDGE

**INTRODUCTION**

Before the Court for consideration is the Motion to Dismiss dated January 27, 2014 (the "Motion"), filed by Thomas Skinner (the "Debtor") and his wife Anna Skinner ("Mrs. Skinner," collectively with the Debtor, the "Defendants") seeking dismissal of the Amended Adversary Complaint (the "Amended Complaint") filed by the Debtor's brother, William Skinner (the "Plaintiff"), pursuant to (i) Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and (ii) Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

Following a hearing held by this Court and after due consideration of the pleadings filed by the parties, this Court will grant the Motion. As discussed below, Plaintiff is not a creditor of the Debtor's estate. This Court cannot conceive of any cognizable legal theory that this Court may rely upon to find the Debtor or his spouse liable to or otherwise obligated to reimburse the Plaintiff for the Plaintiff's personal obligation to reimburse Holy Redeemer Hospital d/b/a St. Joseph's Manor ("St. Josephs") for the cost it incurred in connection with the care provided to the Plaintiff's mother. *See, e.g., Holmes v.*

*Securities Investor Protection Corp.*, 503 U.S. 258, 268-270 (1992) (recognizing that "proximate cause" demands a "direct relation between the injury asserted and the injurious conduct alleged"); *Associated General Contractors of California Inc. v. California State Council of Carpenters*, 459 U.S. 519, 533 n.25 (1983) ("Under the common law... one who pays the medical expenses of another may not recover those expenses from the third-party tortfeasor who caused the damage."); *City of Philadelphia v. Philadelphia Rapid Transit Co.*, 10 A.2d 434, 435 (Pa. 1940).  The Restatement (Second) of Torts §914 is a measure of damages and the Plaintiff may not rely on it to create a cause of action where none otherwise exists.

With regard to his fraudulent transfer claim, the Plaintiff lacks standing because (1) the Bankruptcy Code vests exclusive standing to prosecute fraudulent transfer claims in the trustee, and (2) this Court may not confer derivative standing upon the Plaintiff because his suit, if successful, would not confer a benefit upon the Debtor's estate.

**BACKGROUND/PROCEDURAL HISTORY**

This action presents another chapter in the dispute between the Plaintiff, the Debtor and St. Josephs arising from St. Josephs' attempts to collect the outstanding balance due to St. Josephs as a result of medical, residential and daily living services provided to Dorothy C. Skinner (the "Mother") while she was admitted at the facility of St. Josephs.  In the Amended Complaint Plaintiff alleges that the Mother began residing at an assisted-living facility run by St. Josephs in 2009 and that on or about June 4, 2012, the Mother was evicted from the assisted-living facility due to the Debtor's failure to pay St. Josephs for the services provided to the Mother.  Amended Complaint, ¶¶21 & 22.

The Plaintiff further alleges that beginning in 2007 and using the Debtor's Power of Attorney over the Mother's bank accounts granted to him in April of 2005, the Debtor and his spouse began a scheme to use the Mother's assets, including her interest in long-term care benefits, to fund approximately $85,000.00 of their personal expenses.  Amended Complaint, ¶¶17 & 20.

The Plaintiff contends that but for the Debtor's scheme that began in 2007 to divert the Mother's assets the Mother would have had sufficient assets to make the payment demanded by St. Josephs five years later and three years after her admission to the facility.  Amended Complaint, ¶30.

2

To collect upon the unpaid amounts, St. Josephs filed a complaint dated September 5, 2012, in the Court of Common Pleas of Montgomery County, Case No. 2012-25014-0 (the "Collection Action") against the Mother, the Debtor and the Plaintiff.  In the Collection Action, St. Josephs seeks payment of the costs of care (the "Support Claim") from the Plaintiff pursuant to The Support Law, 23 Pa. C.S.A. §4603 ("The Support Law")[1] and pursuant to the theory of unjust enrichment.[2]  On February 15, 2013, a default judgment was entered in favor of St. Josephs and against the Debtor in the amount of $32,225.56.  On April 16, 2013, the Debtor filed for bankruptcy relief and simultaneously filed a Suggestion of Bankruptcy notifying the Court of Common Pleas of the Debtor's filing for bankruptcy relief.  As a result, the Collection Action was placed in suspense and the focus of the parties' dispute shifted to this forum.

On July 19, 2013, the Plaintiff filed a Complaint (the "Original Complaint") initiating this adversary proceeding.  As described by this Court's Order dated December 19, 2013 (the "First Dismissal Order"), the Original Complaint contained two counts.  The first count sought a declaration that the Plaintiff's claim against the Debtor and his spouse is nondischargeable.  The second count stated the basis of the Plaintiff's alleged claim.  For the reasons stated in the First Dismissal Order, this Court dismissed the Original Complaint because of the Plaintiff's failure, *inter alia*, to include sufficient allegations for this Court to determine whether the Plaintiff held a claim against the Debtor.  First Dismissal Order, ¶4 ("the insufficiency of the Plaintiff's Complaint prevents this Court from evaluating the nature of the Plaintiff's claim").  Despite its insufficiencies, this Court permitted the Plaintiff to file an amended complaint and specifically instructed the Plaintiff to state "[t]he specific basis of the Plaintiff's claim against the Debtor and Mrs. Skinner."  First Dismissal Order, ¶5a.

On January 2, 2014, the Plaintiff filed the Amended Complaint.  Rather than lumping several non-dischargeability causes of action within a single count, the Amended Complaint identifies the specific subsections that the Plaintiff believes entitle him to a declaration of non-dischargeability, 11

---

[1] The Plaintiff is among the class of person who The Support Law imposes personal financial responsibility for the care of Dorothy Skinner.  23 Pa. C.S.A. §4603 (imposing financial responsibility, including the obligation to reimburse providers, for the care of an indigent person upon: (1) spouse; (2) children, and (3) parents).

[2] St. Josephs did not rely upon or otherwise make reference to the alleged tortious conduct that the Plaintiff now relies as the grounds for his request for a determination of the dischargeability of his alleged claim.

3

U.S.C. §§523(a)(4) and 523(a)(6), and pleads each in separate counts. Typically, a nondischargeability complaint begins with a statement of the plaintiff's claim. Not here. The Plaintiff states in Count I and Count II his nondischargeability causes of action and waits until Count IV to state his claim and the cause of action upon which it is premised.

In Count I, the Plaintiff seeks a declaration that the Debtor's liability to the Plaintiff is non-dischargeable pursuant to 11 U.S.C. §523(a)(4) ("§523(a)(4)") because it results from embezzlement or larceny.[3] In Count II, the Plaintiff seeks a declaration that his claim is non-dischargeable pursuant to 11 U.S.C. §523(a)(6) ("§523(a)(6)") because the Plaintiff's claim results from the Debtor's willful and malicious conduct.[4]

In Count IV, the Plaintiff states the legal basis of his alleged right to payment from the Defendants. Count IV of the Amended Complaint essentially restates Count II of the Original Complaint and this Court's prior description of the Plaintiff's alleged right to payment remains applicable.

> [T]he Plaintiff is among the class of person who The Support Law imposes financial responsibility for the care of Dorothy Skinner. 23 Pa. C.S.A. §4603 (imposes financial responsibility for the care of an indigent person upon: (1) spouse; (2) children; and (3) parents)… [T]he Complaint alleges that, to the extent the Plaintiff is required to make payment on the Support Claim, the Plaintiff is entitled to seek reimbursement from the Defendants pursuant to the Restatement (Second) of Torts §914.

First Dismissal Order, p.4.

In other words, the Plaintiff alleges that to the extent he is required to pay St. Josephs its Support Claim, he is entitled to be reimbursed for such payment from the Defendants. The Amended Complaint does not otherwise supplement the Plaintiff's allegations regarding the theory of the Defendants' liability.

---

[3] Even if this Court were to find that the Plaintiff held a claim against the Debtor, the Amended Complaint fails to state the Debtor misappropriated the Plaintiff's property and therefore does not state a basis to declare the alleged debt non-dischargeable pursuant to §523(a)(4). *See, e.g., In re Meyers*, Bky. No. 09-09310, 2010 WL 5475650, *4 (Bankr. M.D. Pa. Dec. 29, 2010) (holding that a creditor could not prove embezzlement claim because the creditor did not own the property that the debtor allegedly embezzled).

[4] As with Count I, Count II would be deficient even if the Plaintiff had stated a viable basis for its alleged claim. The tortious conduct alleged by the Amended Complaint was not directed at the Plaintiff and therefore cannot be the basis for a declaration of non-dischargeability pursuant to §523(a)(6). *The Sherwin Williams Co. v. Grasso (In re Grasso)*, 497 B.R. 434, 447 (Bankr. E.D. Pa. 2013) (stating that the debtor's conduct must have had the purpose of harming the §523(a)(6) plaintiff); *In re Jacobs*, 381 B.R. 128, 138 (Bankr. E.D. Pa. 2008) ("the debtor's actions either must have been taken with the specific goal of causing harm to the creditor").

4

In addition to the allegations regarding the Debtor's alleged liability to the Plaintiff, the Amended Complaint asserts, on behalf of the Debtor's estate, a state law fraudulent transfer claim against the Defendants. In Count III of the Amended Complaint, the Plaintiff alleges that the misappropriation of Dorothy Skinner's funds by the Defendants constitutes a fraudulent transfer under Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S.A. §5101. This claim was not asserted in the Original Complaint and therefore not previously addressed by this Court.

**THIS COURT'S JURISDICTION**

This Court has little difficulty concluding that it has subject matter jurisdiction to hear the Plaintiff's request to have his claim declared non-dischargeable under §523(a)(4) or §523(a)(6). 28 U.S.C. §157(b)(2)(I); *In re DeMarco*, 454 B.R. 343, 347 (Bankr. E.D. Pa. 2011) ("non-dischargeability claims are squarely within this Court's core jurisdiction.").[5] With regard to the Plaintiff's fraudulent transfer claim, this Court acknowledges that there is some doubt as to its authority to issue a final order adjudicating such claims. *See, e.g., Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 56 (1989); *In re DeMarco*, 454 B.R. 343, 348 n.2 (Bankr. E.D. Pa. 2011). However, this Court finds that the issue of this Court's subject matter jurisdiction is not determinative.

Not only must a court have subject matter jurisdiction over the cause of action, the claimant must have standing to assert the cause of action. Without standing, the Plaintiff may not invoke the subject matter jurisdiction of this Court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (noting that standing is "threshold jurisdictional question"); *In re Sullivan*, 455 B.R. 829, 835-36 (1st Cir. BAP 2011) (addressing whether plaintiff in §523(a) proceeding lacked standing because she was not a creditor of the debtor"); *In re Oakley*, 503 B.R. 407, 421 (Bankr. E.D. Pa. 2013); *In re Gronczewski*, 444 B.R. 526, 532 n. 4 (Bankr. E.D. Pa. 2011) ("Questions of standing, if they exist, must be considered *sua*

---

[5] This Court acknowledges that the Amended Complaint also named the Debtor's wife as a defendant. As this Court has previously recognized, "this Court's possible jurisdiction over the Plaintiff's claims against the nondebtor entities is dependent upon the scope of its related-to jurisdiction." *DeMarco*, 454 B.R. at 347-48 (observing that bankruptcy courts likely lack jurisdiction to hear a non-debtor plaintiff's claims against non-debtor defendants). However, because this Court has determined that the Plaintiff lacks standing to assert the claims pled in the Amended Complaint, this Court need not reach the issue of whether its related-to jurisdiction extends to the nondebtor wife.

5

*sponte*, as they are akin to subject matter jurisdiction."). As discussed below, this Court has determined that the Plaintiff lacks standing to initiate a nondischargeability action and his alleged fraudulent transfer suit.

**The Plaintiff's Standing to Initiate a Non-Dischargeability Action, Counts I, II and IV**

Among the Defendants' reasons for dismissal[6] is their argument that the Plaintiff lacks standing because the Amended Complaint fails to set forth sufficient facts from which this Court may infer that the Plaintiff is a creditor of the Debtor. Section 523(c) provides the procedure for the objection to the discharge of a specific debt and provides that, *upon request of a creditor*, this Court may determine whether a debt owed to that creditor may be excepted from discharge. 11 U.S.C. §523(c)(1) (stating that "on request of a creditor" a court may determine a debt is excepted from discharge); *see also* Fed. R. Bankr. P. 4007(a) ("A debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."). Therefore, whether the Plaintiff has standing to object to the Debtor's discharge is intertwined with the merits of the Plaintiff's cause of action against the Debtor. *Stanley v. Vahlsing (In re Vahlsing)*, 829 F.2d 565 (5th Cir. 1987) (remanding with instruction to dismiss adversary proceeding because plaintiff who lacked an enforceable claim did not have standing to object to a debtor's discharge); *In re Kulzer Roofing, Inc.*, 150 B.R. 134, 138–39 (E.D. Pa. 1992) ("only a party to whom a debt is owed under the Bankruptcy Code has standing to challenge the dischargeability of that debt"); *In re Bell*, 498 B.R. 463, 485 (Bankr. E.D. Pa. 2013) ("a determination of the validity of those claims is necessary in the exercise of the core bankruptcy court function of determining the dischargeability of the underlying debt."); *The Sherwin Williams Co. v. Grasso (In re Grasso)*, 497 B.R. 434, 441-42 (Bankr. E.D. Pa. 2013) (finding that plaintiff is the holder of a contingent claim and therefore has standing to maintain non-dischargeability action); *In re August*, 448 B.R. 331, 346-47 (Bankr. E.D. Pa. 2010) (recognizing that for a debt to be declared non-dischargeable, the plaintiff must be the holder of a valid

---

[6] The Motion seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). Because this Court is required to address its jurisdiction first and this issue is determinative of the Motion, this Court will not address Fed. R. Civ. P. 12(b)(6). *See, e.g., In re Summit Metals, Inc.*, 477 B.R. 484, 494 (Bankr. D. Del. 2012) (recognizing that when confronted by a motion to dismiss that challenges a court's jurisdiction as well as the merits of a plaintiff's claims, "the correct procedure is to consider dismissal on the jurisdictional ground first").

claim); *In re Bagen*, 185 B.R. 691, 694 (Bankr. S.D.N.Y. 1995) ("A party objecting to a debtor's discharge and dischargeability has standing if that the party is a 'creditor' within the meaning of the Code sections 727(c)(1) and 523.").

When the issue of this Court's jurisdiction is intertwined with the merits of a plaintiff's cause of action, this Court must accept as true all factual allegations contained in the complaint and construe all reasonable inferences drawn therefrom in the light most favorable to the Plaintiff. *Petruska v. Gannon University*, 462 F.3d 294, 302 (3d Cir. 2006) (construing Fed. R. Civ. P. 12(b)(1) as a Fed. R. Civ. P. 12(b)(6) motion because the inquiry entailed a challenge to the sufficiency of the plaintiff's claim); *Cilio v. Wezner (In re Wezner)*, 470 B.R. 344, 349-52 (Bankr. E.D. Pa. 2012) (addressing merits of claim to determine whether court had jurisdiction to adjudicate it); *see also Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Rogin v. Bensalem Township*, 616 F.2d 680, 685 (3d Cir. 1980). However, application of the pleading requirements of Fed. R. Civ. P. 8 prevents this Court from affording legal conclusions couched as factual allegations a presumption of truth. *Iqbal*, 129 S.Ct. at 1951; *American Casein Company, et al v. Geiger (In re Geiger)*, Adv. No. 10-0228, 2010 WL 3932274, at *1 (Bankr. E.D. Pa. Sept. 29, 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949.

The Bankruptcy Code defines a "creditor" as an "entity that has *a claim* against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. §101(10) (emphasis added). In turn, the Bankruptcy Code defines a "claim" as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, dispute, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. §101(5).

With regard to Counts I, II and IV of the Amended Complaint, the Plaintiff invokes this Court's

jurisdiction to obtain, *inter alia*, a declaration that the Plaintiff is a holder of a claim against the Debtor in the amount of $25,094.00, plus interest and attorneys' fees, and that this claim is nondischargeable. As this Court has previously observed, the Plaintiff then states in Count IV the basis of the alleged Debtor's alleged liability for this amount. In Count IV, the Plaintiff alleges that, to the extent that he is required in the Collection Action to make payment to St. Josephs on the Support Claim, he is entitled to reimbursement from the Defendants. As the legal foundation for the Plaintiff's alleged right to reimbursement, he cites the Restatement (Second) of Torts §914. The Plaintiff argues that his injury, namely his potential liability for St. Josephs' Support Claim, was caused by the Defendants' tortious conduct consisting of their scheme to embezzle the Mother's assets. The Amended Complaint does not contain, and the Plaintiff has not otherwise offered, any other premise for the Plaintiff's alleged right to reimbursement from the Defendants.

The Defendants argue that the Plaintiff does not have standing to sue the Defendants based upon tortious conduct directed at a third party. The Plaintiff does not dispute that the Amended Complaint only references conduct directed at the Mother's property.[7] However, the Plaintiff argues that to the extent he is forced to incur litigation expenses as a result of the Defendants' tortious conduct, the Restatement (Second) of Torts §914 provides a cause of action that entitles him to recover such expenses from the Defendants.

Whether the Plaintiff possesses a right to payment is determined according to applicable state law. *Pennsylvania Dep't of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990) (concluding that a right to payment "is nothing more nor less than an enforceable obligation...."); *In re Bagen*, 185 B.R. 691, 694-95 (Bankr. S.D.N.Y. 1995) (addressing plaintiff's status as a creditor as a prerequisite to plaintiff's capacity to bring non-dischargeability suit). Under Pennsylvania law, a party is generally not entitled to

---

[7] Despite the allegation by the Plaintiff that the Defendants' tortious conduct began in 2007, more than six (6) years prior to the Debtor's bankruptcy filing, the parties curiously failed to address the application of 42 Pa. C.S.A. §5524 to the Plaintiff's capacity to state claim based on such conduct. *See, e.g., In re Canoe Mfg. Co., Inc.*, 466 B.R. 251, 265-66 (Bankr. E.D. Pa. 2012) (discussing "limitation problems" implicated by attempt to file tort claims after expiration of relevant statute of limitations); *In re Fellheimer*, 443 B.R. 355, 376 n.18 (Bankr. E.D. Pa. 2010) (discussing application §108(c) to a party's capacity to file a nondischargeability complaint based causes of action that may be barred by application of a relevant statute of limitation).

recover fees or costs incurred in connection with the prosecution or defense of a cause of action. *Seaboard Sur. Co. v. Permacrete Const. Corp.*, 221 F.2d 366, 371 (3d Cir. 1955); *Corace v. Balint*, 418 Pa. 262, 271-72 (1965). However, consistent with the Restatement of Torts (Second) §914 and as recognized by the Third Circuit, Pennsylvania courts recognize an exception to this general rule that permits a party to recover from a tortfeasor the party's fees and costs incurred by it in defending itself against a suit caused by the tortfeasor. *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 117 (3d Cir. 1992); *Seaboard Sur. Co. v. Permacrete Const. Corp.*, 221 F.2d 366, 371-72 (3d Cir. 1955); *De Lage Landen Financial Services, Inc. v. Miramax Film Corp.*, Civ. No. 06-2319, 2008 WL 4348074, *14-15 (E.D. Pa. Sept. 23, 2008); *Corace v. Balint*, 418 Pa. 262, 273-74 (1965).

Contrary to the Plaintiff's understanding, the right to "contribution" recognized by the Restatement of Torts (Second) §914 is *a remedy* and not a separate and independent cause of action. *Travelers Cas. And Sur. Co. v. Dormitory Authority-State of New York*, 734 F.Supp.2d 368, 386 (S.D.N.Y. 2010) (recognizing that recovery of attorneys' fees and costs incurred in defending earlier litigation is contingent upon "prevailing either on a breach-of-contract or tort claim"). As a *remedy*, the Restatement of Torts (Second) §914 extends the scope of consequential damages an injured party may recover from a tortfeasor. *Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*, 391 F.3d 936, 944-45 (8th Cir. 2004) (recognizing that the Restatement of Torts (Second) §914 extends the scope of damages for certain tort actions); *In re Kroh Bros. Development Co.*, 91 B.R. 525, 536 (Bankr. W.D. Mo. 1988) (recognizing that the Restatement of Torts (Second) §914 permits recovery of "attorney fees from prior litigation… as actual damages if they were the natural and proximate result of defendant's actions"); *Shindler v. Lamb*, 211 N.Y.S.2d 762, 765 (N.Y. Sup. 1959) (stating that right to reimbursement is "treated as a legal consequence of defendants' alleged original wrongful act and recoverable as an item of damages."). Section 914 recognizes that an injured party's consequential damages may include, in addition to the injured party's personal damages caused by the tortfeasor's conduct, attorneys' fees and

costs[8] incurred when defending itself in *a prior action* that relates to the same conduct of the tortfeasor that caused the injured party's personal damages. *Travelers Cas. And Sur. Co. v. Dormitory Authority-State of New York*, 734 F.Supp.2d 368, 386 (S.D.N.Y. 2010) ("Attorney's fees incurred in prior litigation may only be recovered, however, if they were the natural and necessary consequences of the defendant's acts."). The subject matter of the prior action must have been the tortfeasor's tortious conduct and the tortious conduct must have been "the legal cause of the action [in the prior action]." *Corace v. Balint et al.*, 210 A.2d 882, 888 (Pa. 1965) (denying §914 relief because defendant's tortious conduct was not the subject matter of the prior action).

In determining that §914 provides for the measure of a party's damages and is not the source of an independent cause of action, this Court makes reference to the doctrine of proximate cause. The Plaintiff's reading of a fairly obscure law would upend centuries of jurisprudence. Proximate cause requires a plaintiff to plead a direct link between the alleged injury and the alleged conduct. *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002). If the alleged injury is too remote, then a plaintiff may not recover. *See, e.g., Mazzagatti v. Everingham by Everingham*, 516 A.2d 672, 676 (Pa. 1986) (stating "jurisprudential concept that at some point along the causal chain, the passage of time and the span of distance mandate a cut-off point for liability."); *Palsgraf v. Long Island R. Co.*, 162 N.E. 99, 103 (N.Y. 1928) ("the law arbitrarily declines to trace a series of events beyond a certain point").

Problematically, the Amended Complaint does not allege any tortious conduct that was directed at the Plaintiff. By the Plaintiff's admission, the alleged tortious conduct was directed at the Mother. The Plaintiff alleges that the Defendants embezzled the property of the Mother. Later, the Mother became infirm and obtained medical care from St. Josephs who in turn bore the cost of providing such care. Later still, St. Josephs sued the Plaintiff and the Debtor, pursuant to The Support Law, to recover the cost of the

---

[8] The exception is limited to the recovery of litigation expenses. *Goldberg v. Mallinckrodt, Inc.*, 792 F.2d 305, 309 (2d Cir. 1986) (stating that the exception recognized by Restatement of Torts (Second) §914 is "suggestive of traditional litigation costs such as filing fees or fees paid to expert witnesses"); *In re Kroh Bros. Development Co.*, 91 B.R. 525, 536 (Bankr. W.D. Mo. 1988) ("plaintiffs can recover legal expenses incurred in collateral litigation").

10

Mother's medical care. In this chain of events, remoteness would have, absent the cause of action supplied by The Support Law, barred St. Josephs from recovering its Support Claim from the Defendants. *See, e.g., Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445 (3d Cir. 2000) (recognizing that, under common law, hospitals do not have "standing to sue any company that causes a nonpaying patient's disease or illness"); *Anthony v. Slaid*, 52 Mass. 290, 291 (1846) (recognizing that common law prevents a party who voluntary pays medical expenses of party injured by a tortfeasor may not seek recovery from the tortfeasor). If remoteness would have barred St. Josephs, it certainly bars the Plaintiff from stating an actionable injury based upon the Defendants' conduct that the Plaintiff admits to have been directed at a third party.

While the allegations of the Amended Complaint do suggest that the Mother was injured by the Defendants' tortious conduct, that conduct was directed at the Mother and her property. The conduct was not directed at the Plaintiff. The Plaintiff may not invoke a cause of action that belongs to his Mother to remedy the Plaintiff's liability for the Support Claim. *See, e.g., Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-269 (1992) ("a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover."); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002). Absent allegations that the Defendants' conduct was directed at the Plaintiff, the causal chain may not be extended to include the Plaintiff's liability to Saint Josephs. *Beretta*, 277 F.3d at 423 ("a plaintiff who cannot establish some direct relation between the injury asserted and the injurious conduct alleged fails to plead a key element for establishing proximate causation, independent of and in addition to other traditional elements of proximate cause."). Even if any connection can be inferred, the remoteness of the causal connection between the Defendants' conduct and the Plaintiff's alleged injury appears clearly from the facts alleged by the Amended Complaint and therefore warrants dismissal. *Allegheny General Hosp. v. Philip Morris, Inc.*, 228 F.3d 429, 445 (3d Cir. 2000) ("When an injury is indirect, remote, and many steps away from the alleged cause, it is unadvisable to allow a case to proceed."). In establishing whether he has suffered actionable injury, the Plaintiff may not rely upon §914 to otherwise escape the

requirements of proximate cause. *See, e.g. Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377, 1390 (2014) ("the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."); *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992) (discussing the concept of "proximate cause"); *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 423 (3d Cir. 2002) (stating that a plaintiff who fails to plead a direct relation between a defendant's conduct and a plaintiff's injury "fails to plead a key element for establishing proximate causation").

Absent a theory of liability, this Court cannot infer that the Plaintiff is the holder of a claim. The Restatement of Torts (Second) §914 does not provide the Plaintiff an independent cause of action and the Amended Complaint otherwise fails to state a plausible theory of the Debtor's liability to the Plaintiff.[9] Therefore, this Court must dismiss Counts I, II and IV because the Plaintiff lacks standing to object to the Debtor's discharge.

**Standing to Assert Fraudulent Transfer Claim, Count III**

In Count III of the Amended Complaint, the Plaintiff alleges that the Defendants' misappropriation of the Mother's assets constitutes a fraudulent transfer within the meaning of 12 Pa. C.S.A. §5101 *et seq.* ("PAUFTA"). Once again, this Court may determine that the Plaintiff lacks standing to assert this cause of action. The Bankruptcy Code vests exclusive standing to prosecute fraudulent transfer claims, including PAUFTA claim, in the trustee. 11 U.S.C. §§522(h) &544(b)(1); *Weyandt v. Federal Home Loan Mortgage Corp. (In re Weyandt)*, App. No. 11-4565, 2013 WL 6052130, *2 (3d Cir. Nov. 18, 2013); *Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel.*

---

[9] Even if the Amended Complaint contained allegations that could establish that the Plaintiff's alleged injury was proximately caused by the Defendants' conduct, the Plaintiff's potential personal liability for the Support Claim as well as any attorneys' fees or costs that the Plaintiff may incur in connection the Collection Action are not within the scope damages contemplated by the Restatement of Torts (Second) §914. The Amended Complaint contains no allegation from which this Court may infer that the alleged torts committed by the Defendants were the subject matter of the Collection Action. *Travelers Ins. Co. v. Bank Bldg. & Equipment Corp. of America*, 307 F.Supp. 510, 512 (W.D. Pa. 1969) ("it must be shown that the prior suit against this plaintiff was proximately caused by *some tortious act of the present defendant directed at the present plaintiff*") (emphasis added); *Corace v. Balint et al.*, 210 A.2d 882, 888 (Pa. 1965) (denying §914 relief because defendant's tortious conduct *was not the subject matter of the prior action*) (emphasis added). The Plaintiff's liability for the Support Claim is the Plaintiff's personal obligation to reimburse St. Josephs for the costs St. Josephs incurred in connection with the care provided for the Plaintiff's mother.

12

*Cybergenics Corp. v. Chinery*, 330 F.3d 548, 581 (3d Cir. 2003) ("The plain text of §544 makes clear that only the trustee may invoke the remedies under the statute."); *In re Gronczewski*, 444 B.R. 526, 533-34 (Bankr. E.D. Pa. 2011). As with most rules, an exception exists. A bankruptcy court is empowered to confer derivative standing upon another party only if (1) the trustee failed to bring suit in disregard of her fiduciary duties, and (2) the suit, if successful, *would confer a benefit upon the estate*. *Weyandt v. Federal Home Loan Mortgage Corp. (In re Weyandt)*, App. No. 11-4565, 2013 WL 6052130, *2 (3d Cir. Nov. 18, 2013).

Even if the Plaintiff was a creditor of the Debtor,[10] this Court is precluded from exercising its equitable powers to confer derivative standing upon the Plaintiff. This Court has no difficulty understanding why, in full observance of her fiduciary duties, the Chapter 13 trustee would have declined to bring this suit. The Plaintiff seeks to avoid transfers of assets from the Mother to the Defendants, a transfer that allegedly enriched the Debtor. If successful, the avoidance of the alleged transfers would cause the divestiture of estate assets and necessarily fail to benefit the Debtor's estate. The Plaintiff has not offered and cannot offer any explanation of how the avoidance of the alleged transfers would benefit the Debtor's creditors. For this reason, this Court is not authorized to confer derivate standing upon the Plaintiff. *In re National Forge Co.*, 326 B.R. 532, 543 (W.D. Pa. 2005) (stating creditor asserting derivative standing must have "alleged a colorable claim that would *benefit the estate*") (emphasis added); *In re Yes! Entertainment Corp.*, 316 B.R. 141, 145 (D. Del. 2004) (stating creditor must have "asserted colorable claims which may yield substantial recovery to the estate."). This Court can conceive of no "salutary effects" of conferring derivative standing upon a creditor to bring a suit that would exclusively benefit that creditor to the detriment of all other creditors. *See, e.g., Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 572-73 (3d Cir. 2003) (discussing "salutary effects" of conferring derivative standing).

---

[10] Absent §544(b)'s grant of exclusive standing to the trustee and even if the avoidance of the alleged transfer would benefit the estate, this Court notes that its determination that the Plaintiff does not hold a colorable claim against the Debtor would be determinative of the Plaintiff's standing to assert a PAUFTA claim. *See, e.g., In re Blatstein*, 260 B.R. 698 712 (E.D. Pa. 2001) ("Under [PAUFTA], *a creditor* is empowered to bring an action to have a fraudulent transfer set aside.") (emphasis added).

13

**CONCLUSION**

Count IV of the Plaintiff's Amended Complaint fails to state a plausible basis for this Court to infer that the Debtor is liable to the Plaintiff for the Support Claim or any other amount. As a result, the Plaintiff lacks standing to assert the objections to the Debtor's discharge pled in Count I and Count II of the Amended Complaint. Finally, the Plaintiff lacks standing to assert the PAUFTA claim pled in Count III of the Amended Complaint because his suit, if successful, would not confer a benefit upon the Debtor's estate. Having afforded the Plaintiff a second attempt to set forth a plausible cause of action against the Defendant, this Court is convinced that further amendment would be futile and will dismiss the Amended Complaint with prejudice.

An order consistent with this Memorandum will be entered.

Dated: October 8, 2014

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE

Alan B. Kane, Esquire
The Law Office of Alan B. Kane
One Montgomery Plaza, Suite 608
Norristown, PA  19401

Stuart A. Eisenberg, Esquire
Carol B. McCullough, Esquire
McCullough Eisenberg, LLC
65 West Street Road, Suite A-204
Warminster, PA  18974

Michael S. Schwartz, Esquire
Law Office of Michael Schwartz
707 Lakeside Office Park
Southampton, PA  18966

Courtroom Deputy
Eileen Godfrey